# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01090-SCT

### *RICKY CUMMINGS AND THE DEMOCRATIC PARTY OF THE STATE OF MISSISSIPPI*

*v.*

### *BETTY BENDERMAN AND LAMAR SKINNER*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/95 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | NICHOLAS B. PHILLIPS |
| | JOHN F. HAWKINS |
| | SAMUEL L. BEGLEY |
| ATTORNEY FOR APPELLEES: | PHIL R. HINTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. This is an appeal of an election contest which began with the filing of a petition contesting the Democratic primary election for House of Representatives, District One. The petition was filed on September 13, 1995 in the Circuit Court of Alcorn County, Mississippi by Plaintiffs Betty Benderman and Lamar Skinner and named Ricky Cummings as the Defendant.

¶2. Cummings answered the petition on October 4, 1995, and on October 10, 1995, Cummings moved to join the Democratic Party of the State of Mississippi ("the State Committee") as a necessary party. On that same day, the State Committee moved to intervene as a party. Both motions were denied. Trial was held on October 16, 1995, and the trial court rendered its opinion and order on the following day. The trial court found that the "Mississippi Democratic Executive Committee acted in a manner inconsistent and in violation of the provisions of applicable statutory law by placing the name of Ricky Cummings was [sic] on the ballot," and accordingly, ordered that a new primary election be held.

¶3. Cummings moved for a stay of that order which was denied. However, by order of this Court dated October 31, 1995, the trial court's order was stayed pending appeal. Cummings and the State

Committee filed timely notices of appeal raising the following issues:

**I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING RICKY CUMMINGS' MOTION TO JOIN THE DEMOCRATIC PARTY AS A NECESSARY PARTY AND IN DENYING THE DEMOCRATIC PARTY'S MOTION TO INTERVENE,**

**II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE STATE DEMOCRATIC EXECUTIVE COMMITTEE VIOLATED THE ELECTION LAWS WHEN IT CERTIFIED RICKY CUMMINGS AS ITS NOMINEE FOR THE OFFICE OF DISTRICT ONE MISSISSIPPI HOUSE OF REPRESENTATIVES, AND**

**III. THE TRIAL COURT ERRED IN ITS CONCLUSION OF LAW THAT THE STATE DEMOCRATIC EXECUTIVE COMMITTEE FOLLOWED THE WRONG PROCEDURE IN NAMING RICKY CUMMINGS AS THE DEMOCRATIC NOMINEE.**

¶4. Currently, there is no statute authorizing the actions taken by the State Committee nor is there a statutory method provided to resolve the situation in which the State Committee found itself. In the case *sub judice*, the State Committee acted in good faith, following what guidance they found in the provisions of the election laws of this State. This matter should be reviewed and possibly addressed by the Legislature.

¶5. Finding that the trial court abused its discretion by not allowing the State Committee to intervene by right or permissively, and finding further that the State Committee's actions could not, as a matter of law, be found improper, we hold that the lower court was in error. Therefore, this Court reverses and renders the Chancellor's finding that, as a matter of law, the State Committee acted in a manner inconsistent with and in violation of the provisions of applicable statutory law by placing the name of Ricky Cummings on the ballot and calling for a special election.

<u>**STATEMENT OF THE FACTS**</u>

¶6. Harvey Benderman and Thomas W. Park were the only persons to have timely filed as candidates for the Democratic Party's nomination for District One's seat in the Mississippi House of Representatives. However, before the State Committee could convene to certify the qualifications of the two candidates,[1] Harvey Benderman died. The State Committee met on Saturday, April 29, 1995, and, in accordance with Miss. Code Ann. § 23-15-299(6), declared Park, their sole remaining candidate, to be the Party's nominee for the District One House of Representatives seat.[2]

¶7. After declaring Park to be the nominee, the State Committee then considered Park's letter of withdrawal from the election. Park was an employee of the United States Postal Service, and he believed his candidacy would be in violation of the Hatch Act. The State Committee accepted Park's letter of withdrawal contingent upon his given reason being accepted by the State Board of Election Commissioners. The State Committee then determined that a vacancy existed for a nominee for the District One House of Representatives seat and took steps to select a nominee for that seat.

¶8. Following an overview of the procedure of placing names in nomination by Alice Skelton, Executive Director of the Mississippi Democratic Party, Cummings' name was placed in nomination. The minutes of the State Committee's meeting reflect that the county chairs had approved of Cummings and it was voiced, by a member of the Committee, that the first district's wishes should be honored. Cummings' nomination was approved and he was certified as a candidate. The State Board of Election Commissioners subsequently approved of Park's withdrawal as a candidate for a "legitimate, non-political reason." Accordingly the State Committee, acting on the good faith belief that § 23-15-317 Miss. Code Ann. (1972) so allowed, chose Cummings to be the Democratic nominee for the District One House of Representatives seat.

¶9. The Democratic primary election was held on August 8, 1995. Despite the write-in campaign vigorously conducted by Appellees Betty Benderman and Lamar Skinner, Cummings won the election and went on to win the general election held in November of 1995. Cummings has recently concluded his first session with the State Legislature.

## STANDARD OF REVIEW

¶10. The issues before this Court may readily be divided into questions of law and questions of fact. Our review of a chancellor's findings is well settled and very familiar. This Court will always review a chancellor's findings of fact, but the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. *Smith v. Dorsey*, 599 So. 2d 529, 533 (Miss. 1992); *Bowers Window and Door Co., Inc. v. Dearman*, 549 So. 2d 1309 (Miss. 1989) (citing *Bullard v. Morris*, 547 So. 2d 789, 791 (Miss. 1989)); *Gibson v. Manuel*, 534 So. 2d 199, 204 (Miss. 1988); *Johnson v. Hinds County*, 524 So. 2d 947, 956 (Miss. 1988); *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 661 (Miss. 1985); *Culbreath v. Johnson*, 427 So. 2d 705, 707-08 (Miss. 1983). Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong. *Collins By Smith v. McMurry*, 539 So. 2d 127, 129 (Miss. 1989).

¶11. In reviewing errors of law, this Court proceeds *de novo*. *Bilbo v. Thigpen*, 647 So. 2d 678, 688 (Miss. 1994); *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

## DISCUSSION OF THE LAW

### THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING RICKY CUMMINGS' MOTION TO JOIN THE DEMOCRATIC PARTY AS A NECESSARY PARTY AND IN DENYING THE DEMOCRATIC PARTY'S MOTION TO INTERVENE.

¶12. Appellants argue that the trial court abused its discretion and erred as a matter of law in denying Cummings' motion to join the State Committee. Cummings contends that the State Committee should have been joined as a necessary party pursuant to M.R.C.P. 19. Alternatively, the State Committee argues that it should have been allowed to intervene as a matter of right or permissively pursuant to

M.R.C.P. 24. The actions which took place and complained of in the case *sub judice* were taken by the State Committee. Appellants allege that State Democratic Party has an interest that would not be adequately protected if the State Committee was not made a party. "The trial court's decision denying the Democratic Party access to the election contest forum at the very least served to 'impair or impede' the Party's ability to protect its interest in having its decision to make Ricky Cummings the nominee upheld and in its future actions of selecting nominees."

¶13. Appellees argue that the State Committee "was not a person needed for a just adjudication in this matter." Arguing that M.R.C.P. 19 and 24 have little or no application in an election contest, Appellees contend that the State Committee did not have the type or quality of interest in the election contest necessary to intervene under the Mississippi Rules of Civil Procedure or under the inherent power of the trial court. Therefore, Appellees contend, the trial court was not in error in its failure to allow the State Committee to be joined as a party in the election contest.

¶14. Any court of this State sitting as an appellate court has the inherent authority to allow additional parties to participate in the appeal upon timely application or upon the court's invitation. *Cooper v. City of Picayune*, 511 So. 2d 922, 923 (Miss. 1987). Indeed, there may be occasions when the court should decline to act until all necessary parties have been joined. *See Gates v. Union Naval Stores Co.*, 92 Miss. 227, 229, 45 So. 979 (1908).

¶15. M.R.C.P. 24(a)(2) provides:

> (a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

¶16. In *Guaranty National Ins. v. Pittman*, this Court followed federal practice and applied four prerequisites to Rule 24(a)(2) - Intervention of Right:

> (1) The would be intervenor must make a timely application; (2) He must have an interest in the subject matter of the action; (3) He must be so situated that disposition of the action may "as a practical matter" impair or impede his ability to protect his interest; and (4) His interests must not already be adequately represented by the existing parties.

*Guaranty National Ins. v. Pittman*, 501 So. 2d 377, 381 (Miss. 1987). "In construing these requirements, we acknowledge their wording vests considerable discretion, as a practical matter, in the trial judge." *Id.* at 381, n. 1. Two months after *Guaranty National*, this Court in *State ex rel. Pittman v. Mississippi PSC*, 506 So. 2d 978, 988 (Miss. 1987), *rev'd on other grounds,* 487 U.S. 354 (1988), held intervention improper where the applicants' interest was adequately represented by a party to the action.

¶17. The Circuit Court, when sitting as a court of appeals, has the authority to allow third parties to intervene in the appeal. *Cooper,* 511 So. 2d at 923.

> "Upon timely application, any such third party should be permitted to intervene if that party

claims an interest relating to the property or transaction which is the subject of the appeal and is so situated that disposition of the appeal may as a practical matter impair or impede his ability to protect that interest, unless that party's interest is adequately represented by the existing party. This premise, of course, is not susceptible of mechanical application, and necessarily a certain amount of discretion is vested in the Circuit Court when considering an application for intervention. On these conditions, however, the Circuit Court does have authority to allow the intervention."

*Id.*

¶18. To intervene one must assert a "'direct, substantial, legally protectable interest' in the proceedings. . . . A movant found to be a 'real party in interest' generally establishes sufficient interest." *League of United Latin Amer. Citizens v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989). The First Circuit Court of Appeals held the district court did not abuse its discretion in denying a petition for intervention under Rule 24(a)(2) and stated:

> The various components of the Rule are not bright lines, but ranges--not all "interests" are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness. Application of the rule requires that its components be read not discreetly, but together. A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention. The requirements for intervention embodied in Rule 24(a)(2) must be read also in the context of the particular statutory scheme that is the basis for the litigation and with an eye to the posture of the litigation at the time the motion is decided. Finally, although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action.

*International Paper v. Town of Jay, ME*, 887 F.2d 338, 344 (1st Cir. 1989).

¶19. The record in the case *sub judice* shows that the State Committee's interest in the subject matter was substantial. Alone, Cummings could not provide the Appellees any relief. Only the State Committee could provide them relief. The State Committee has a cognizable interest in that the outcome of this litigation would directly affect its actions in the future with regard to dealing with a situation in which a vacancy occurs prior to a primary election. The State Committee's interest also involves the candidacy of Cummings. The State Committee sponsored Cummings as a candidate and it certainly wants to see that candidacy upheld. Cummings, a "real party in interest," established an interest separate and independent of that of the State Committee. Cummings' interest, however, was insufficient to protect that of the State Committee.

¶20. It is the opinion of this Court that the State Committee's interests were not adequately represented by Cummings in the election contest, and consequently the State Committee should have been allowed to intervene permissively, if not by right.

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE STATE DEMOCRATIC EXECUTIVE COMMITTEE VIOLATED THE ELECTION LAWS WHEN IT CERTIFIED RICKY CUMMINGS AS ITS NOMINEE**

**FOR THE OFFICE OF DISTRICT ONE MISSISSIPPI HOUSE OF REPRESENTATIVES,**

**AND**

**THE TRIAL COURT ERRED IN ITS CONCLUSION OF LAW THAT THE STATE DEMOCRATIC EXECUTIVE COMMITTEE FOLLOWED THE WRONG PROCEDURE IN NAMING RICKY CUMMINGS AS THE DEMOCRATIC NOMINEE.**

¶21. Appellants argue that the State Committee "was caught between the proverbial rock and a hard place" when it convened on April 29, 1995. It was faced with the prospect of having no Democrat on the ballot in November and, consequently, conceding the seat to the Republican nominee. The Appellants contend that the State Committee "reasonably employed the statutory law that it had available to it to remedy a deplorable situation."

¶22. Appellees counter that the State Committee did not have the authority to nominate Cummings. By hand-picking Cummings as the nominee, the State Committee willfully violated mandatory provisions of the election laws of this State. In so doing, the State Committee usurped the voting rights and power of the qualified electorate of Alcorn and Tishomingo Counties.

¶23. The State Committee contends that it "acted in a manner consistent with, and arguably required by the applicable statutory law, particularly § 23-15-317 Miss. Code Ann. (1972)" which provides:

> If any person nominated for office in a primary election shall die, be removed after his nomination or withdraw or resign from his candidacy for a legitimate nonpolitical reason as defined in this section, and such vacancy in nomination shall occur between the primary election and the ensuing general election, then the municipal, county or state executive committee with which the original nominee qualified as a candidate in the primary election shall nominate a nominee for such office.

¶24. Admittedly, a close reading of the statutes reveals that this statute applies only to candidates who withdraw **after** a primary and not before; therefore, the Appellants may have been incorrect in their reading and application of the statute. However, this Court has only construed this statute in one case, *Latham v. Molpus*, 642 So. 2d 1340 (Miss. 1994), and the Court's holding in that decision provides us little guidance in the case *sub judice*. It is important to note that the statute in question was not designed to circumvent the rights of the voters but was "designed to keep political parties on an even footing." *Id.* at 1342.

¶25. The manner in which the State Committee selected Cummings is not authorized in any section of the State's election laws, and there is no provision which gives direction to the State Committee on how to proceed given the set of facts presented in the case *sub judice*. The election procedure or lack thereof in this situation presents a problem which the Legislature, in its wisdom, may want to address.

¶26. Appellants concede that "the Appellees can point to technical infirmities on the part of the Committee in the way it went in selecting Cummings." However, Appellants argue that technical

irregularities will not vitiate an election where there is no evidence of fraud or intentional wrong. This Court has recently agreed. *See Wibourn v. Hobson*, 608 So. 2d 1187 (Miss. 1992); *Rizzo v. Bizzell*, 530 So.2d 121, 128-29 (Miss. 1988).

¶27. In addition to the above concerns as to the legality of the actions of the State Committee, Appellees present an additional argument. Appellees contend that the primary election should be vacated as it did not accurately reflect the will of the electorate. "The Democratic Party's nomination of Ricky Cummings was such a total departure from the fundamental provisions of the Election Statutes as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain."

¶28. Finally, in addition to the above, Appellees address the obvious advantage Cummings held as the sole candidate whose name appeared on the ballot. The trial court in its Finding of Fact and Opinion found that "this Court will never be able to determine quantitatively, the advantage of Cummings's name appearing on the ballot." The trial court then listed several factors that might have affected the vote, including the suggested significance of the printed name, the potential to mislead voters into believing the position was uncontested, and the problems encountered by voters finding no instructions, pens or pencils.

¶29. The nature of the violations, while serious, cannot totally control the disposition of this case, and this Court must balance the public interest with that of the successful contestant.

> When deciding whether a special election is warranted, we recognize competing interests which must be weighed and balanced. While the voters are not parties to this contest, their interests are paramount. Special elections are a great expense for the county and its taxpayers. Beyond that, the turnout for a special election is never as great as when there are a number of candidates on the slate. By contrast, we feel that the rights of the individual candidates cannot be allowed to overshadow the public good.

*Rizzo v. Bizzell*, 530 So. 2d 121, 128-29 (Miss. 1988) (quoting *Noxubee County Democratic Exec. Comm. v. Russell*, 443 So.2d 1191, 1197 (Miss. 1983)).

¶30. In justice to the contestee, Ricky Cummings, and to the election officials, it should be said that there is no fact or circumstance in the case at bar that would indicate any wrongful or fraudulent purpose in the conduct of the election. The question before this Court merely involves the validity or invalidity of the election in the two counties in question in view of the procedure the State Committee followed.

## CONCLUSION

¶31. The State Committee's interests were not adequately represented by Ricky Cummings in the election contest, and consequently the State Committee should have been allowed to permissively intervene in the matter if not allowed to intervene by right.

¶32. The State Committee acted in good faith, and arguably within the scant guidelines provided by the Legislature, in their selection of Ricky Cummings to be the Democratic Party's nominee for the primary after the death of Harvey Benderman and the withdrawal of Thomas W. Park. We cannot

say, as a matter of law, that the State Committee acted in a manner inconsistent with and in violation of the provisions of applicable statutory law by placing the name of Ricky Cummings on the ballot.

¶33. Accordingly, it is the opinion of this Court that the judgment of the Special Tribunal be reversed and Ricky Cummings is declared the rightful occupant of the District One House of Representatives seat.

**¶34. REVERSED AND RENDERED.**

**PRATHER, P.J., PITTMAN, McRAE, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ.; LEE, C.J., JOINS THIS OPINION IN PART. MILLS, J., NOT PARTICIPATING.**


  **BANKS, JUSTICE, CONCURRING:**


¶35. The short answer to the question before the Court is that both this Court and the court below lack the jurisdiction to adjudicate it because of Section 38 of the Constitution of the State of Mississippi as recognized by this Court in *Foster v. Harden*, 536 So. 2d 905 (Miss. 1988).[3] The result of recognizing our lack of jurisdiction would be the same as that reached by the majority opinion--Ricky Cummings would remain a member of the legislature because he was never challenged in the proper forum, the Mississippi House of Representatives. Miss. Const. Art. 4, § 38; *Foster*, 536 So. 2d at 907. The majority's road to that result, however, is dubious at best.

¶36. The majority concedes that no statute or other law authorized the actions of the Mississippi Democratic Executive Committee. While in the absence of its actions the party may have been left without a candidate, that is always the case when no one qualifies to run for the party nomination. The legislative scheme extant simply does not provide for remediation of the loss of candidates prior to nomination. That is a matter which should, no doubt, be addressed by the legislature. Perhaps, in a proper case, it should be addressed by this Court. This is not a proper case.

¶37. I would vacate the judgment of the circuit court because that court lacked jurisdiction to adjudicate in these premises.

**PRATHER AND SULLIVAN, P.JJ., JOIN THIS OPINION. LEE, C.J., JOINS THIS OPINION IN PART.**


1. Miss. Code Ann. § 23-15-299(6) requires that the proper executive committee determine whether or not each candidate is a qualified elector.

2. This provision provides that "[w]here there is but one (1) candidate, the proper executive committee when the time has expired within which the names of candidates shall be furnished shall declare such candidate the nominee."

3. With reference to the legislature, the Mississippi Constitution, Article 4, Section 38 reads as follows: "Each house shall elect its own officers, and shall judge of the qualifications, return and election of its own members."